IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CESAR ANDRADE, | § | |
| TDCJ-CID NO. 0154922, | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. H-10-0685 |
| | § | |
| RICK THALER, | § | |
| Respondent. | § | |

OPINION ON DISMISSAL

Petitioner Cesar Andrade a state inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed through counsel, a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a 2005 murder conviction. Respondent has filed a motion for summary judgment (Docket Entry No.8), to which petitioner has filed a response and cross-motion for summary judgment. (Docket Entries No.11, No.12).

For the reasons to follow, the Court will grant respondent's motion for summary judgment, deny petitioner's cross-motion for summary judgment, and dismiss this case with prejudice.

I.      BACKGROUND AND PROCEDURAL HISTORY

A grand jury in Harris County, Texas charged petitioner in cause number 754997 with the May 24, 1997 murder of Margarito Alberto Resendez by shooting complainant with a firearm. *Andrade v. State,* No.14-05-01227-CR, Clerk's Record, page 2. A jury in the 228th Criminal District Court of Harris County, Texas heard the following evidence as summarized by the Fourteenth Court of Appeals for the State of Texas:

>  Appellant, accompanied by his girlfriend, was driving a white Nissan pickup truck when it collided with a gray Ford Tempo driven by Margarito Alberto Resendez, the nineteen year-old complainant.  Appellant lowered his window, reached under his seat and removed a small, silver or chrome revolver, and fired approximately five shots at the complainant.  Appellant then drove off and continued to his girlfriend's apartment.  The complainant died as a result of gunshot wounds to his chest and posterior right upper arm through the chest.  Upon learning the police were investigating the murder, appellant fled the country to El Salvador.  Appellant had returned to Houston by 2000, but later moved to California where he was arrested and convicted on other charges.  Following his conviction for attempted murder in California, appellant was brought back to Texas for trial.

*Andrade v. State*, 246 S.W.3d 217, 222 (Tex. App. - Houston [14th Dist.] 2007, pet. ref'd).  The jury found petitioner guilty as charged.  *Id.*

The Fourteenth Court of Appeals further described events that took place during the punishment hearing, as follows:

>  During the entirety of his trial, appellant was represented by his counsel of record, Abraham Fisch.  During the punishment phase of the trial, an additional attorney, R. Scott Shearer, appeared to assist Mr. Fisch.  While questioning a witness, Mr. Shearer asked the court to allow him to make an offer of proof on testimony the trial court had excluded in response to an objection made by the prosecution.  The trial court denied that request.  Mr. Shearer then passed the witness and the prosecution also passed the witness.  The trial court then excused the witness.  At that point, Mr. Shearer again asked the court to make an offer of proof, which the court denied and instructed Mr. Shearer to sit down.  When Mr. Shearer objected once again to the trial court's refusal to allow him to make an offer of proof, the trial court ordered him ejected from the courtroom for violating the court's rule against arguing with the court.  This entire episode occurred in the presence of the jury.  Mr. Fisch was present for the entire punishment phase of appellant's trial.

*Id.*  The jury assessed petitioner's punishment at fifty-five years confinement in TDCJ-CID and a fine of $10,000.  *Id.*

Petitioner challenged his conviction on the following grounds:

1.      The state district court violated his right to counsel and his right to a public trial by ejecting one of his attorneys during the punishment phase of trial;

2.      The state district court committed reversible error by preventing his counsel from making offers of proof during trial;

3.      The state district court erred in admitting into evidence a photograph of petitioner holding two handguns;

4.      The state district court erred by overruling his objections to improper jury argument by the prosecution;

5.      The state district court erred by admitting into evidence, during the punishment phase of trial, the two handguns found in petitioner's possession during the early stages of the investigation of complainant's murder.

*Id*. at 222-23.  The state intermediate court of appeals addressed each issue and affirmed the judgment of the state district court.  *Id*. at 232.  One justice filed a concurring and dissenting opinion.  *Id*. at 232-235.  Petitioner challenged the appellate court's judgment with respect to all grounds except for the admission of the two handguns during the punishment phase of trial. *Andrade v. State*, PDR 343-08.  The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on September 10, 2008.

On December 1, 2009, petitioner filed a state habeas application in the state district court, challenging his conviction on the following grounds:

1.      He was denied the right to counsel by the state district court's ejection of one of his attorneys during the punishment phase of trial;

2.      He was denied the effective assistance of counsel during the punishment phase of trial by the representation of the least prepared attorney on his team when Attorney Shearer was ejected from the courtroom;

> 3. He was denied the right to confrontation by the state district court's refusal to allow counsel to make an offer of proof with respect to a ballistics expert for impeachment purposes; and,
>
> 4. He was denied the effective assistance of counsel on appeal.

*Ex parte Andrade*, No. 754997-A, pages 2-11. The state district court, sitting as a habeas court, entered Findings of Fact and Conclusion of Law. *Id.*, pages 23-24. The state habeas courts did not address petitioner's complaint of trial error with respect to the ejection of counsel and denial of request to make a bill of exception because the issue had been raised and addressed on direct appeal. *Id.* page 23. The state habeas court did not consider petitioner's complaint that the trial court denied him the opportunity to confront his accuser by excluding impeachment evidence because such complaint was a record claim, which petitioner failed to raise in trial and on direct appeal. *Id.* The state habeas court further found that petitioner was not denied the effective assistance of counsel during the punishment phase of trial by the ejection of the appellate lawyer and that he was not denied the effective assistance of counsel on appeal. *Id.*, page 24.

The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without a hearing. *Id.* at Action Taken page.

In the pending federal habeas action, petitioner seeks relief on the following grounds:

> 1. He was denied the right to counsel under the Sixth Amendment when his counsel was ejected from the courtroom in the presence of the jury;
>
> 2. He was denied the right to confront the State's ballistic expert with impeachment evidence;

3.      He was denied the right to the effective assistance of counsel during the punishment phase of trial when the state district court removed counsel from the courtroom;

4.      He was denied the effective assistance of counsel on appeal because his appellate counsel did not raise the Confrontation Clause claim on direct appeal.

(Docket Entries No.1, No.2, No.11).

Respondent moves for summary judgment on grounds that petitioner's claims are without merit. (Docket Entry No.8). In his cross-motion, petitioner moves for summary judgment as a matter of law on the same grounds raised in his pleadings. (Docket Entry No.11).

## II.    <u>DISCUSSION</u>

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Because petitioner filed his federal habeas corpus action after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA standard of review, this Court cannot

grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

The "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Id*.; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (finding that "[a] state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent'").

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (stating that  "[t]he question under the AEDPA is not whether a federal court believes the

state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold"); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) (noting that "it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, (2004) (stating that "[w]e look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Section 2254(d)(2) of Title 28, United States Code provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, --- U.S. ----, 130 S.Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"). Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination. *Wood*, --- U.S. at ----, 130 S.Ct. at 849; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, Section 2254(e)(1) provides a petitioner challenging state court factual findings must establish by clear and convincing evidence the state court's findings were erroneous.  *Schriro*, 550 U.S. at 473-74 (noting that "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence'"); 28 U.S.C. § 2254(e)(1).  It remains unclear at this time whether Section 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under Section 2254(d) (2).  *See Wood*, --- U.S. at ----, 130 S.Ct. at 849 (choosing not to resolve the issue of Section 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of Section 2254(e)(1)).  However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (stating that "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief").

A federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision.  *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006) (holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," it applies only to the extent that it does not conflict with the habeas rules.  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.

2000).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004)*.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

### A.    Confrontation-Based Ineffective Assistance of Appellate Counsel

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  It also guarantees a criminal defendant the right to effective assistance of counsel.  *Id.*

Petitioner contends that he was deprived of his Sixth Amendment right of confrontation by the state district court's refusal to allow his attorney to impeach the State's ballistics expert regarding the expert's misidentification of the caliber of a bullet in testimony given in an earlier, unrelated trial.  (Docket Entries No.1, No.2, No.11).  The state habeas courts declined to address such claim because it was a "record claim" that petitioner did not raise in trial or on direct appeal.  *Ex parte Andrade*, No. WR-73,431-01, page 23.  Respondent contends the claim is procedurally defaulted because petitioner did not brief the issue on direct appeal. (Docket Entry No.8).

### 1.    Procedural Bar

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default.  *Ylst v. Nunnemaker*, 501 U.S.

797, 802-04 (1991).  It is well settled under Texas jurisprudence that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.  *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991).  The federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal.  *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005).  Because petitioner did not raise such claims on direct appeal[1] and the last court to consider such claims expressly and unambiguously based its denial of relief on a state procedural default, petitioner's Confrontation Clause claim is barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner does not dispute the state habeas courts' findings and does not allege that he is actually innocent or the subject of a fundamental miscarriage of justice.  Instead, petitioner contends that the defaulted claim is the result of the ineffective assistance of his appellate counsel, who failed to raise such issue on direct appeal.  (Docket Entry No.11).  In certain circumstances counsel's ineffective assistance is sufficient to excuse a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  A claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

Respondent maintains that the Confrontation Clause error is harmless and petitioner's ineffective assistance of appellate counsel is without merit.  (Docket Entry No.8).

---

[1] Petitioner appellate counsel complained on direct appeal that "the trial court committed reversible error when it repeatedly denied appellant the opportunity to make offers of proof prior to the charge being read to the jury during the guilt/innocence phase of appellant's trial."  *Andrade v. State*, 246 S.W.3d 217, 225-26 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).  The appellate court noted that the appellant did not raise "any issue challenging the trial court's exclusion of any of the testimony at issue in appellant's offers of proof."  *Id.*, n. 6.

2.      Assistance of Appellate Counsel

The state habeas courts found the following with respect to the confrontation-based assistance-of-counsel claim:

> Regarding Applicant's claims of ineffective assistance of appellate counsel, the Court finds that Applicant fails to show that appellate counsel's conduct fell below an objective standard of reasonableness and that, but for appellate counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 686; *Hernandez*, 726 S.W.2d at 57; *Narvais*, 840 S.W.2d at 434; and *Ex parte Butler*, 884 S.W.2d 782, 783 (Tex. Crim. App. 1994) (applying the two-pronged analysis of *Strickland* to question of whether counsel rendered effective assistance on direct appeal).

*Ex parte Andrade*, Application No. WR-73.431-01, page 24.  Such findings indicate that the state habeas courts addressed petitioner's confrontation-based ineffective assistance claim on the merits.  Therefore, this Court must apply the AEDPA's deferential standard to petitioner's confrontation-based ineffective assistance claim.  *See Woodfox v. Cain*, 609 F.3d 774, 794-97 (5th Cir. 2010).

An accused is constitutionally entitled to effective assistance of counsel on direct appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Claims of ineffective assistance of counsel are determined by the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Robbins*, 528 U.S. 259, 286 (2000).  Therefore, petitioner must demonstrate that the representation of his appellate counsel was deficient and that such deficiency prejudiced his case.  *Strickland*, 466 U.S. at 687.  Because an appellate counsel is not required to raise every nonfrivolous claim on appeal, but may select from among them in order to maximize the likelihood of success on appeal, it is difficult to demonstrate the incompetency of counsel when a brief on the merits is filed.  *Smith*, 528 U.S. at 288.  The presumption of

11

competency is overcome "'only when ignored issues are clearly stronger than those presented.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

"Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). "The Confrontation Clause . . . is satisfied where defense counsel has been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. Restivo*, 8 F.3d 274, 278 (5th Cir. 1993) (internal quotation omitted). A defendant's right to cross-examine a witness, however, is not unlimited. Trial courts retain wide discretion "to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

12

Petitioner claims the state district court denied him an opportunity to impeach the reliability of the testimony of the State's ballistic expert regarding the caliber of the bullet used in the present offense with evidence that the expert had incorrectly identified the caliber of a bullet in another case.  (Docket Entries No.2, page 16; No.11, page 36).  Petitioner maintains that such impeachment is not an attack on the expert's credibility but an attack on the accuracy of his testing results.  (*Id.*).  The record, however, shows that petitioner's trial counsel argued to the state district court that under the Sixth Amendment's Confrontation Clause such questioning "goes to the motive and bias of this witness.  It's directly relevant to him and we should be allowed to get into it on cross-examination as to his credibility as a ballistics firearms examiner." *Andrade v. State*, No.14-05-01227-CR, Reporter's Record, Volume V, page 93.  The state district court found such questioning was not relevant to the case and refused to allow such questioning.[2]  *Id.*

Assuming without deciding that the exclusion of such testimony violated the Confrontation Clause, the Court finds that such exclusion was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  *See Hogue v. Johnson*, 131 F.3d 466, 498-99 (5th Cir. 1997).  Under the *Brecht* standard, a habeas court cannot grant relief unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Id*. When a petitioner alleges a Confrontation Clause error, courts consider several factors in harmless error review.  *Van Arsdall*, 475 U.S. at 684.  "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on

---

[2] Under both state and federal rules, evidence that is not relevant is inadmissible at trial and the determination of the relevance lies within the discretion of the trial court.  *See McKee v. State*, 855 S.W.2d 89, 91 (Tex. App.—Houston [14th Dist.] 1993, no pet.); *U.S. v. Nutall*, 180 F.3d 182, 189 (5th Cir. 1999).

material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

Petitioner contends that the alleged error was significant because the ballistic expert's testimony casts doubt on the testimony of one eyewitness that the gun used was an automatic weapon and bolstered the testimony of the other eyewitness that petitioner used the revolver depicted in a photograph admitted at trial to commit the murder. (Docket Entry No.11, pages 40-42). He further argues that the excluded evidence was important evidence by which jurors could "judge Baldwin's credibility as well as his training, judgment and expertise." (*Id.*, page 42).

Unlike his testimony in the prior case, the ballistic expert's testimony in this case was inconclusive as to the caliber of bullet and type of weapon used in the murder, although he indicated that the most common characteristic of the bullet matched a revolver.[3] *Compare Williams v. Quarterman*, 551 F.3d 352, 355 (5th Cir. 2008) (noting that Baldwin "specifically testified that the 'EB-1' bullet came from a .25-caliber pistol" and not from the .22-caliber pistol an eye-witness admitted that he carried). Petitioner's trial counsel subjected the expert to a vigorous cross-examination regarding his knowledge of ballistics and investigation techniques and his opinion that the projectile "could have been fired out of a .38 Special or a .357 Magnum." *Andrade v. State*, No.14-05-01227-CR, Reporter's Record, Volume V, pages 78-87, 88-91, 95). The expert conceded several times during cross-examination that he could not rule out the possibility that the bullet or fragment could have been fired out of a semiautomatic. *Id.*,

---

[3] The State's ballistic expert testified on direct examination that based on his evaluation of the projectile purportedly recovered from the autopsy of complainant, "the most common type of firearm that [he had] encountered that would fire this type of projectile would be a revolver." *Andrade v. State*, No.14-05-01227-CR, Reporter's Record, Volume V, pages70, 71, 74, 76. He further testified that because he did not have the actual gun in his possession, "there's no way for me to say with absolute certainty that it was fired in a revolver." *Id.*, page 75.

pages 89, 96, 98, 100.  On redirect, he testified that he could not exclude other guns because he did not have the actual gun.  *Id.* at 101.

The expert's testimony did not mark petitioner as the murderer nor identify the actual murder weapon.   His testimony, however, gave some support to the testimony of petitioner's ex-girlfriend, who testified that petitioner used a revolver to shoot complainant.  The expert's testimony did not contradict or cast doubt on the testimony of the other eye witness,[4] who testified that he thought the gun was an automatic; the expert repeatedly stated that he could not be sure and that the bullet fragment could have been fired from an automatic weapon.

Although evidence regarding the type of weapon and bullet used in this case was inconclusive, evidence of petitioner's guilt was sufficient to support his conviction.  Petitioner's ex-girlfriend testified that she was in the vehicle with petitioner when he pulled a revolver from under the seat of his car and shot complainant.   The cab driver who witnessed the shooting testified that he saw gunfire coming from a vehicle matching the description of petitioner's vehicle.   The investigating officer testified that he observed petitioner and another man standing near a white Nissan pick up truck parked in front of petitioner's residence, which was registered to petitioner's girlfriend and which appeared to have moderate damage to the exterior.   Other testimony showed that petitioner fled the country after police issued a warrant for him.

In light of this record, the Court finds that the exclusion of evidence showing that the State's expert misidentified the caliber of bullet in an unrelated case, if indeed error, did not have a "substantial and injurious effect or influence in determining the jury's verdict" in this

---

[4] The State argued that the importance of the other eyewitness's testimony was the identification of the vehicle from which he observed petitioner fire a weapon.  *Andrade v. State*, No.14-05-01227-CR, Reporter's Record, Volume 6, page 70.

case.  The error, if any, was harmless.  If harmless, appellate counsel did not waive a meritorious claim by failing to raise the Confrontation Clause on direct appeal.

Moreover, given the strength of the State's case against him, petitioner fails to show a reasonable probability that the appeal would have had a different outcome had his appellate counsel addressed these issues on direct appeal.  Therefore, he fails to show his entitlement to federal habeas relief with respect to the adequacy of the representation of his appellate counsel and fails to show cause and prejudice for the procedural default.

Accordingly, respondent is entitled to summary judgment on petitioner's Confrontation Clause claim and his ineffective assistance of appellate counsel claim.

### B.   Denial-Deprivation of Assistance of Counsel

Petitioner contends that he was deprived of the assistance of counsel and denied counsel during the punishment phase of trial when the state district court ejected one of his retained attorneys from the court room.  (Docket Entry No.1, pages 4, 11).   Respondent maintains that petitioner has not shown in this habeas action that the disposition of this claim by the state courts was legally incorrect and objectively unreasonable.  (Docket Entry No.8, page 9).

In his Original Petition, petitioner claims, without discussion, that he was denied the right to counsel when the state district court ejected Attorney Shearer from the courtroom during the punishment phase of trial.  (Docket Entry No.1).  He also claims that he was denied of the effective assistance of counsel during the punishment phase because Attorney Shearer was primarily responsible for the presentation of punishment evidence and by his wrongful ejection, the lawyer who was prepared was not present.  (*Id.*).

In his Memorandum and his Response to Respondent's Motion for Summary Judgment, petitioner argues that he was deprived of counsel or received ineffective assistance of

16

counsel and that such deprivation or ineffectiveness "was caused by the actual interference by the trial court—clearly a state actor."  (Docket Entries No.2, page 39; No.11, pages 57-58). Petitioner argues that the ejection of Attorney Shearer by the state district court amounts to government interference with the ability of counsel to represent his client, which he claims is "deprivation of counsel."  (Docket Entries No.2, page 37; No.11, page 55).  He maintains that the state district court interfered with his lawyer's independent professional judgment by threatening the lawyer with contempt and eventually ejecting the lawyer from the courtroom "for representing his client and preserving error just like the First Court of Appeals said he should do."  (Docket Entries No.2, page 37; No.11, page 56).

The record shows before the commencement of the punishment hearing, the state district court introduced Attorney Shearer to the jury and indicated that he "permitted him to come in to assist defense counsel."  *Andrade*, No.14-05-01227-CR, Reporter's Record, Volume VII, page 9.  After opening statements by the prosecutor and petitioner's lead counsel, Attorney Fisch, the State presented its case and Fisch cross-examined two state witnesses.  Attorney Shearer then briefly cross-examined complainant's mother.   After the state district court sustained the State's hearsay objection to Shearer's question regarding something the mother told the police, Shearer asked the state district court if he could make an offer of proof.  *Id.*, page 65. The state district court denied the request and Shearer passed the witness without objection.  *Id*. The prosecutor indicated that she had no further questions and the state district court told the witness to step down.  *Id.*, pages 65-66.  Shearer then informed the state district court that he would "like to make an offer of proof while she's still available."  *Id.*, page 66.  The state district court denied the request.  *Id.*  Attorney Shearer protested that he had to and the state district court ordered him to "[h]ave a seat."  *Id*.  Shearer said, "I have to object to the Court's failure to offer

– to let me make an --." *Id.*  The state district court ordered Shearer to be escorted out of the courtroom.  *Id.*

Attorney Fisch objected that the state district court's action denied his client's Sixth Amendment right to counsel and moved for a mistrial.  *Id.* pages 66-67.  The state district court denied the motion for mistrial and stated the following, in pertinent part:

> I think the record should be clear that Mr. Shearer has not been here since this trial began.  On the request of lead counsel, I permitted Mr. Shearer to sit in and assist.  But like everybody, I specifically gave him a copy of the Court's rules.  One of those rules is that you're not to argue with the Court and its rulings.  And the record speaks for itself after that.  And so, like I had granted him permission to come in, likewise, I granted him permission to leave.

*Id.*, page 67.  Attorney Fisch then informed the state district court that Attorney Shearer had to object to the denial of the offer of proof because if he did not, he would have waived error.  *Id.*, page 68.  He argued that by objecting, "[h]e was doing his job in representing Mr. Andrade."  *Id.* The state district court responded that he had already informed counsel and put on the record that he would allow a bill of proof to be made at the conclusion of trial and that he would not permit "the fair administration of justice to be delayed."  *Id.*  Attorney Fisch objected that to not being allowed to make an offer of proof before the conclusion of trial.  *Id.*  After a break, the punishment trial resumed.  Fisch made an offer of proof regarding the excluded testimony of complainant's mother before the charge was read to the jury during the punishment phase of trial.  *Id.*, Reporter's Record VII, pages 111-123.

On direct appeal, petitioner argued that he had a right to counsel of his choice, that the state district court violated his right to counsel by ordering the attorney from the courtroom in violation of *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).  *Andrade v.*

*State,* No.14-05-01227-CR, Brief for Appellant, pages 8-16).  The Fourteenth Court of Appeals

addressed petitioner's claim, as follows, in pertinent part:

> The right to select counsel of one's choice is considered the core meaning of the Sixth Amendment's guarantee of the right to counsel.  *United States v. Gonzalez-Lopez,* 548 U.S. 140, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).  A trial court's erroneous deprivation of this right is structural error and not subject to harmless-error analysis.  *Id.,* 548 U.S. 140, 126 S.Ct. at 2564, 2566.  The error requires automatic reversal on appeal.  *Id.*

> Here, the trial court initially appointed Patricia Segura as counsel to represent appellant during the trial.  Soon thereafter, appellant filed a motion to substitute Mr. Fisch as his attorney of record.  The trial court granted appellant's motion and Mr. Fisch replaced Ms. Segura as appellant's attorney of record.  Appellant filed no further motions to substitute counsel.  In addition, appellant did not bring any complaints regarding Mr. Fisch's performance as his attorney of record to the attention of the trial court.  The appellate record establishes that Mr. Fisch remained appellant's attorney of record throughout the entire trial and was present for the entirety of appellant's trial.  On the sixth and final day of appellant's trial, the punishment phase, Mr. Shearer appeared in the trial court.  Mr. Shearer had been retained by appellant as his appellate counsel and to assist Mr. Fisch during the trial.  The trial court granted Mr. Shearer permission to assist Mr. Fisch.  As detailed above, it was at the end of Mr. Shearer's questioning of a witness early in the punishment phase, that he was ejected from the courtroom by the trial court.  After Mr. Shearer was ejected, Mr. Fisch handled the remainder of the trial.  Mr. Shearer argued appellant's motion for new trial and is appellant's attorney of record in this appeal.

> The trial court did not violate appellant's Sixth Amendment right to retained counsel of his choice.  Under the Sixth Amendment, a criminal defendant can retain multiple attorneys based on the attorney's specialized skills.  *See Kozacki v. Knize,* 883 S.W.2d 760, 763 (Tex. App.-Waco 1994, (original proceeding)) (recognizing constitutionally protected right of a criminal defendant to retain specialized counsel of their choice to handle a particular portion of a criminal proceeding).  Here, appellant exercised that right and retained two separate attorneys, one for trial and one for appeal.  As stated above, Mr. Fisch, appellant's counsel of choice for trial, was present throughout his entire trial.  Therefore, the trial court did not deprive appellant of his counsel of choice under the Sixth Amendment.

*Andrade v. State*, 246 S.W.3d 217, 223-24 (Tex. App.--Houston [14 Dist.] 2007, pet. ref'd) (footnotes omitted).

In his Petition for Discretionary Review, petitioner maintained that Attorney Shearer did not argue with the state district court.  Petitioner claimed that Shearer "voiced his objections exactly as the law required him to do.  [He maintained that t]he panel, unfortunately, elevates a local rule against 'arguing with the court' to a level never before seen.  Apparently, the local rules of a trial court now trump case law from higher courts as well as the rules of evidence and appellate procedure."  *Andrade v. State*, PDR-343-08, page 4.  The Texas Court of Criminal Appeals refused his Petition for Discretionary Review.

In the pending habeas action, petitioner maintains that "[t]he Court of Appeals on direct appeal was presented only with the issue of whether the trial court deprived Petitioner of his right to counsel of choice."  (Docket Entries No.2, page 34; No.11, page 53).  He claims that the Court of Appeals held that he was not deprived of counsel because his lead counsel was present throughout the entire trial and no one claimed that he was ineffective.  (Docket Entries No.2, pages 34-35; No.11, page 53).  Petitioner claims the appellate court "used an incorrect standard to determine . . . whether Petitioner was deprived of his right to counsel. . . . All it looked at was whether there was a body in the courtroom."  (Docket Entries No.2, page 38; No.11, page 56).  Petitioner claims that the ejection of Attorney Shearer was an unreasonable interference with the assistance of counsel by a state actor, much like the state interference in cases cited by the Supreme Court in *Strickland* and *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). (Docket Entries No.2, page 38; No.11, page 57).  Petitioner argues that the trial court as a state actor chose to ignore rules adopted for the conduct of trials, intimidated trial

counsel, and kicked one out "simply for attempting to comply with Rule 103." (Docket Entries No.2, page 38; No.11, page 57).

The record does not support petitioner's claims.  Unlike the attorney in *Gonzalez-Lopez*, Attorney Fisch was lead counsel throughout the entirety of petitioner's trial.  Shearer was neither lead counsel nor substitute counsel.  Shearer, who had been retained as an appellate attorney, was permitted by the state district court to assist Fisch during the punishment phase of trial.  Although Fisch objected on Sixth Amendment grounds to the expulsion of Attorney Shearer, he did not indicate that Shearer had been employed to represent petitioner during the punishment phase; nor did Fisch request a continuance to prepare for the punishment hearing or to regain the services of Shearer.  Fisch represented petitioner throughout the entirety of the trial in his capacity as lead counsel, without objection.

Unlike the cases noted by the Supreme Court in *Cronic*,[5] the expulsion of Shearer from the courtroom did not deprive petitioner of the assistance of counsel during a critical stage of the proceeding.  Before his expulsion, Shearer had completed his examination of the witness and had twice been denied a request to make an offer of proof.  Fisch was allowed to make the requested offer of proof before the charge was read to the jury during the punishment phase of trial.  The record reflects no evidence that Shearer was to conduct the punishment phase of trial or that he was the counsel who was most prepared to represent petitioner during this phase of trial.

Contrary to petitioner's claim in his Petition for Discretionary Review, the record shows that the state district court perceived that Shearer was arguing with the court about its

---

[5] The Supreme Court noted in *Cronic* that it had "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Cronic*, 466 U.S. at n.25 (citations omitted).

ruling, in direct violation of the court's general rules regarding objections and the court's admonishments to Attorney Fisch about his conduct.  Throughout the guilt-innocence phase of trial, the state district court repeatedly admonished Attorney Fisch about arguing with court rulings and proper decorum in the court.  Eventually, the state district court addressed the conduct of counsel in the proceedings.  *Andrade*, No.14-05-01227-CR, Reporter's Record V, pages 6-8.  After giving counsel a copy of the court's rules, the court specifically addressed General Rule No.2, which stated that counsel must make objections briefly and on legal grounds. The court explained the meaning of such rule, as follows, in pertinent part:

> Sir, what that means is I will not tolerate any speaking objections from you or from the State.  Okay.  It's not allowed.  If you give a speaking objection, it is violating the rules of court.  It's wasting my time.  And from now on, I'm going to consider it contemptuous because I'm specifically telling you not to give speaking objections.  Simply stand up. State your objection.  I'll rule.  And then you can – whatever you need to do to preserve it, that what you do.

*     *     *     *     *

> Do not argue with the Court.  I have ruled.  And on numerous occasions you have argued with the Court about my rulings.  It's unprofessional and you know it's not allowed.  If you do it again, like the other ones, I'll hold you in contempt.

*Id.*, pages 6-7.

Shearer was ejected after the state district court twice denied his request to make an offer of proof.  He did not voice an objection after the first ruling and disobeyed the court's order to sit down after the court denied his second request.  The state district court indicated that although Attorney Shearer had not been present during the course of the entire trial, he been given a copy of the court's rules and was aware that one rule was not to argue with the Court and its rulings.  *Id.*, Reporter's Record VII, page 67.

"Traditionally, courts enjoy broad discretion to determine who shall practice before them and to monitor the conduct of those who do.  Since attorneys are officers of the courts before which they appear, such courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct."  *U.S. v. Dinitz*, 538 F.2d 1214, 1220 (5th Cir. 1976).  In this case, the state district court ejected counsel to ensure an orderly trial in accordance with the court's rules regarding the professional conduct of lawyers.  *Compare Gonzalez-Lopez*, 548 U.S. at 151-52.  The punishment trial proceeded with lead counsel, without objection.

Accordingly, petitioner fails to show his entitlement to relief under the AEPDA standard of review on this deprivation-denial of assistance of counsel claim.  Respondent, therefore, is entitled to summary judgment.

### III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242

F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).  A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons stated in this Opinion on Dismissal, the Court has determined that petitioner has is not entitled to a certificate of appealability.  Therefore, a certificate of appealability from this decision will be denied.

IV.  <u>CONCLUSION</u>

Accordingly, the Court ORDERS the following:

1.   Respondent's Motion for Summary Judgment (Docket Entry No. 8) is GRANTED.

2.   Petitioner's Cross-Motion for Summary Judgment (Docket Entry No.11) is DENIED.

3.   This cause of action is DISMISSED, with prejudice.

4.   A certificate of appealability is DENIED.

5.   All other pending motions, if any, are DENIED.

The Clerk will provide copies to the parties.

SIGNED at Houston, Texas, this 16th day of March, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE